Earl French **COX, Jr.**, petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

**No. 1206 Civil.**

United States District Court,
E. D. North Carolina,
Wilson Division.

April 3, 1973.

Joseph Forer, Forer & Rein, Washington, D. C., Jerome Paul, Paul, Keenan & Rowan, Durham, N. C., for petitioner.

Thomas P. McNamara, U. S. Atty., Raleigh, N. C., for respondent.

## MEMORANDUM OPINION
## and ORDER

LARKINS, District Judge:

On July 30, 1968, Earl French Cox, Jr., appeared in person and by Mr. Louis B. Meyer, his privately retained counsel, entered a plea of guilty before this Court to a charge of robbing a Goldsboro Bank the deposits of which were insured by the Federal Deposit Insurance Corporation, in violation of Title 18 U.S.C. § 2113(d). The petitioner, and his four co-defendants, were convicted and each was sentenced to a term of imprisonment of fifteen (15) years pursuant to the provisions of Title 18 U.S. C. § 4208(a)(2). Petitioner was seventeen (17) years of age at the time of the bank robbery and at the time of his conviction.

In November, 1970, petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, alleging (1) that the authorization by the Assistant Attorney General to proceed against him under the adult criminal procedure rather than as a juvenile as provided by 18 U.S.C. § 5032 was unconstitutional, and (2) that the sentence imposed by the court was unlawful, made without jurisdiction, and in excess of the maximum authorized by law in that: (a) the aforesaid direction by the Assistant Attorney General was invalid; and (b) that the sentence was imposed without a finding that petitioner would not derive benefit from the provisions of 18 U.S.C. § 5010(b) or (c). Petitioner's motion to set aside sentence was denied by this Court in an order on February 16, 1971. The petitioner appealed to the Fourth Circuit Court of Appeals, and the case was remanded by order dated September 12, 1972. The Circuit Court held that this Court should have a hearing to determine whether or not treatment under the Youth Corrections Act would be beneficial to the petitioner, Earl French Cox, Jr.

On March 5, 1973, this Court, in accordance with said order from the Court

of Appeals, conducted a hearing in Wilson, North Carolina, to determine the above issue. Petitioner was represented by Mr. Joseph Forer and Mr. Jerry Paul, his privately retained counsel. This opinion is the result of that hearing.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ To determine whether or not treatment under the Youth Corrections Act would be beneficial to the petitioner, Earl French Cox, Jr., this Court looks first to whether treatment under said Act would have been beneficial to the petitioner when he was sentenced on July 30, 1968. At that time it was apparent to this Court that Cox was the leader of this group of five young men although he was seventeen years of age at the time, having been born on February 23, 1951. Convicted and sentenced with the petitioner were his co-defendants: Nathan Edwards, age 19, Goldsboro, N. C.; Frederick Leon Williams, age 19, Washington, D. C.; McKinley C. Joyner, Jr., age 20, Washington, D. C.; and Carl Merritt Jones, age 21, Washington, D. C.

After hearing testimony at the original trial and at this hearing, and after a careful examination of the records and files of this case, this Court is still of the opinion that Earl French Cox, Jr., was the leader of this group. The record indicates that Cox drove Jones, Williams, and Joyner from Washington, D. C., to Raleigh, North Carolina, where Jones went to college, in a car owned by Cox's cousin. From Raleigh the group travelled to the home of Jones' college roommate, Nathan Edwards, in Goldsboro, North Carolina. It was at Edwards' home where Cox suggested to the group that they rob a bank. Acting on this suggestion, the young men travelled to a bank where Cox went in and "checked out" the situation. Cox returned to the car and told the group they could rob this bank. The other members of the group did not agree, so

Cox asked Edwards to direct them to another bank. They then travelled to the Branch Bank and Trust Company where the armed robbery occurred. A short time later the group was arrested and the money recovered. Both the armed robbery and the arrests occurred on June 5, 1968.

At the arraignment and trial all five young men were represented by counsel. Williams and Joyner had court-appointed counsel, while Edwards, Jones, and Cox each had privately retained counsel. James G. Akers of the F.B.I. testified for the government at the trial and was cross-examined. Petitioner's attorney, Mr. Meyer, did not cross-examine the government's witness. While Mrs. Rosa Edwards testified for her son, Nathan Edwards, and Felicia Hope Jones testified and presented character letters for her son, Carl Jones, there was no testimony on behalf of the petitioner regarding mitigation of sentence. Before sentencing petitioner stated to the Court that he felt that the crime he committed was "entirely wrong" and expressed his desire to be a "proper citizen" when he returned to society. Petitioner's counsel, a distinguished member of the North Carolina Bar, requested that petitioner be sentenced under the Federal Youth Corrections Act because of his age, attitude, and intelligence. At that time the Court considered this request and implicitly found it would do no good. All five defendants were sentenced to fifteen (15) years imprisonment pursuant to 18 U.S.C. § 4208(a)(2) thus becoming eligible for parole at such time as the Board of Parole may determine. It should be remembered that petitioner could have received the maximum sentence of twenty-five (25) years imprisonment and a $10,000 fine, therefore the sentence being served is a lenient one.

After petitioner pleaded guilty, a pre-sentence report dated July 24, 1968, was submitted to aid this Court in determining the sentence to be imposed upon the petitioner. The pre-sentence report re-

flected that Cox had pending against him at the time the following charges:

"12-8-67    Housebreaking (commercial)—Circuit Court—Montgomery County—Rockville, Maryland—Pending.

4-7-68    Unauthorized Use of Vehicle—Juvenile Court—Washington, D. C., Pending.

4-16-68    Simple Assault—Juvenile Court—Washington, D. C., Pending.

4-25-68    Unauthorized Use of Vehicle—Juvenile Court—Washington, D. C., Pending.

4-26-68    Petty Larceny (auto tags)—Juvenile Court—Washington, D. C., Pending.

4-30-68    Robbery (armed holdup of a bus driver)—Juvenile Court—Washington, D. C., Pending."

Pre-Sentence Report on Earl French Cox, Jr., July 24, 1968, page 2.

The report further indicated that petitioner falsified his age, indicating that he was an adult, to arresting officers in the Rockville, Maryland, case. He also lied as to his age to the motor vehicle department where he obtained a District of Columbia driver's license. The report noted that petitioner had an extremely antisocial attitude and a poor work record. It reveals that a reliable confidential source felt that Cox was the leader and instigator of this offense and was in need of incarceration in an institution at the time of the report. For the reasons discussed heretofore this Court believes that the sentence imposed was fair and just, however, after rehearing en banc, a majority of the U.S. Court of Appeals held this Court erred at that time by not making an explicit finding that Cox would not benefit from treatment under the Youth Corrections Act.

Almost five years have passed between the time of petitioner's trial and this hearing on March 5, 1973 in Wilson, North Carolina. Therefore, this Court feels that to properly determine whether or not treatment under the Youth Corrections Act would be beneficial to the petitioner, it must look also to whether treatment under said Act would be beneficial to the petitioner at the time of his hearing. For this reason this Court ordered the Bureau of Prisons to send petitioner's prison record which it has filed as a part of the record in this case.

Petitioner was initially committed to the Federal Reformatory at Petersburg, Virginia, on August 6, 1968. Petersburg is a youth offender and young adult institution with an age range of 18 to 23 with Youth Corrections Act 24, 25, 26 at time of commitment. At Petersburg, petitioner received a disciplinary report for refusing an order and for being demanding and insolent. He was placed in segregation and considered to be an agitator. On October 23, 1968, petitioner was transferred to Marion, Illinois, for adjustment purposes.

The United States Penitentiary at Marion is a maximum security facility for adult offenders who require unusually close control. Petitioner testified at his hearing that he only remained at Marion for two months. However, during this time he continued to be a disciplinary problem. On October 30, 1968, he received a major disciplinary report for being in possession of a kitchen knife.

In December, 1968, petitioner was transferred to the Federal Correctional Institution in Milan, Michigan. The program at Milan is geared to meet the needs of young adults, who are capable of profiting from an intensive treatment and training effort. The age range, from 18 to 23 with Y.C.A. 24, 25, 26 at the time of commitment, is substantially the same as that of Petersburg. However, petitioner was still unable to bene-

fit from incarceration with young offenders. Petitioner received eight (8) misconduct reports from December, 1968, to January, 1970, causing him to lose time status. His misconduct, including insolence, possession of contraband, destruction of government property, and threatening an officer, and his refusal to adjust caused petitioner to be described as an "agitator" and a "problem case". Nevertheless, petitioner did complete his General Equivalency Diploma while at Milan.

Petitioner testified that he was transfered back to Marion in March, 1970. He remained there until he was transfered to the United States Penitentiary in Lewisburg, Pennsylvania, on August 19, 1970. This move was to place petitioner nearer to his release destination, which is Washington, D. C. Lewisburg is a medium security penitentiary for adults, 24 and older. During his first three months, petitioner continued his misbehavioral pattern receiving three misconduct reports and being placed in segregation for all violations.

Petitioner's most recent disciplinary infraction, that of writing an inflammatory letter, was incurred in January, 1971. Since that time he has made remarkable improvement. There have been no disciplinary infractions since January 8, 1971. He was reassigned to the Education Department where he worked in the Library until March 8, 1972, when at his own request he was reassigned to work as an orderly on the cell block where he resides. There he has received commendable ratings and responds favorably to routines and regulations. Cox has been active in the Education Department where he is enrolled in an ICS business management course. He has been enrolled in college seminars in political science, and has indicated his intention to return to college and major in economics. Recommendations from his Professors at the Williamsport Area Community College indicate he surpasses all the others and they would recommend him to any four year college or university. Cox scored an I.Q. of 132 in 1966, and test results while in prison indicate he is average ability level, and scored in all 36 occupational aptitude patterns.

The four co-defendants with Cox have been released on parole and Cox is scheduled to appear before a member of the United States Board of Parole via an institutional review hearing in May, 1973. It is anticipated that the staff will recommend parole at that time.

This Court has therefore weighed the benefits to be derived from resentencing Cox as a youth offender in lieu of his present 4208(a)(2) sentence and finds as a fact that all of the progress which he has made to date has been in an adult institution such as the United States Penitentiary, Lewisburg, Pennsylvania, which is a medium security penitentiary for adults, and to remove him now to a youth offender reformatory type institution, such as the Robert F. Kennedy Youth Center as Cox requested at his hearing, may offset his remarkable progress, as he has become adjusted to his present confinement.

The Court finds that the only advantage which could come to this twenty-two (22) year old male adult under the provisions of Title 18, U.S.C., Section 5010(b) or (c), is that the record may be expunged after his release and after a period of satisfactory supervision in a community setting. His present commitment under the provisions of Title 18 U.S.C. § 4208(a)(2) specifies that Cox may become eligible for parole at such time as the Board of Parole may determine, however it does not permit the record to be expunged.

The Court therefore concludes that Cox would not benefit from treatment and supervision under the Youth Corrections Act on July 30, 1968, as found by the Court in the findings of fact above set forth, and since it is unlikely that the record would be expunged in the future to resentence him now under the provisions of the Youth Corrections Act would be a disservice to him. This should be the last button off Cox's

coat, he having served almost one-third (⅓) of his present sentence and with credit for gain time, he should earn an early parole.